T.C. Memo. 1998-264


UNITED STATES TAX COURT


JOHN J. KAISER and SOFIA P. KAISER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20118-84, 14503-85.          Filed July 20, 1998.


John J. Kaiser, pro se.

<u>Robert Saal</u>, for respondent.


MEMORANDUM OPINION


WELLS, <u>Judge</u>:  In the instant consolidated cases,
hereinafter referred to collectively as case, respondent
determined deficiencies in petitioners' 1980 and 1981 Federal
income taxes in the amounts of $10,497 and $42,343, respectively.
Respondent also determined that part of the underpayment of

Federal income tax for petitioners' 1981 taxable year was substantial and attributable to tax-motivated transactions within the meaning of section 6621(d).[1]

After concessions,[2] the issues for decision are:[3] (1) Whether petitioners have previously "resolved" and "settled" all issues in the instant case; (2) whether a bad debt deduction in the amount of $15,064 claimed by petitioners on their 1981 return should be treated as a business bad debt or a nonbusiness bad debt; and (3) whether petitioners are entitled to deduct losses

---

[1]    Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]    Respondent concedes that petitioners are entitled to an investment tax credit for the 1981 taxable year in the amount of $713 and that no portion of any deficiency determined for the 1981 taxable year is attributable to a tax-motivated transaction within the meaning of sec. 6621(d).
        In the notices of deficiency, respondent disallowed losses claimed by petitioners on Schedule E of their 1980 and 1981 Federal income tax returns in the amounts of $14,033 and $67,033, respectively, which losses related to certain equipment leasing activities.  Petitioners and respondent agree that petitioners are entitled to losses from those activities for petitioners' 1980 and 1981 taxable years in the amounts of $20,232 and $55,037, respectively.

[3]    Respondent served petitioners with a request for admissions pursuant to Rule 90(a) and filed the same with the Court pursuant to Rule 90(b).  Petitioners failed to respond to respondent's request for admissions.  Consequently, each matter set forth therein is deemed admitted pursuant to Rule 90(c).  Alexander v. Commissioner, 926 F.2d 197, 198-199 (2d Cir. 1991), affg. per curiam T.C. Memo. 1990-315; Marshall v. Commissioner, 85 T.C. 267, 272 (1985); Morrison v. Commissioner, 81 T.C. 644, 647 (1983).  Respondent did not rely on the deemed admissions, however, and proceeded at trial as if they did not exist.

from an activity entitled "Computer Books + Tapes" claimed on Schedule C of their 1980 and 1981 returns.

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by reference, and they are found accordingly. Petitioners resided in Briarcliff Manor, New York, at the time they filed their petitions.

1. Whether All Issues Have Been "Resolved" and "Settled"

Preliminarily, we address petitioners' contention that they have "settled" and "resolved" all issues in the instant case. Petitioners argue that they previously reached agreement with respondent concerning all issues in the instant case and that they previously submitted checks to respondent in full satisfaction of all taxes and interest owed for the years in issue. Petitioners point to certain payments they allege to have been made to the Internal Revenue Service which, petitioners allege, "totally resolved" all issues in the instant case. Respondent argues that although petitioners may have made payments, such payments were applied to taxable years other than those at issue in the instant case, and, in any event, that payments made by petitioners after the notice of deficiency is mailed do not affect our jurisdiction to decide the correctness of the asserted deficiencies and income tax overpayments.

We agree with respondent. Petitioners misunderstand the purpose of the instant proceedings. Respondent determined

deficiencies in petitioners' 1980 and 1981 Federal income taxes. A deficiency is generally defined as an amount by which the income, gift, or estate tax due under the law exceeds the amount of such tax shown on the return. Sec. 6211; Bregin v. Commissioner, 74 T.C. 1097, 1102 (1980).

Section 6212(a) provides that if the Secretary determines that there is a deficiency, he is authorized to send notice of such deficiency to the taxpayer. Pursuant to section 6213(a), the taxpayer may then file a petition with the Tax Court, within a specified time, for a redetermination of the deficiency. Section 6214 provides that this Court has jurisdiction to redetermine the correct amount of tax deficiencies that are contested in timely petitions filed by taxpayers. Sec. 6214(a); see also sec. 6213. If this Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of tax for the same taxable year, section 6512(b) provides that "the Tax Court shall have jurisdiction to determine the amount of such overpayment".

Accordingly, the function of this Court is to decide the correctness of the deficiency determined by respondent and the amount thereof, if any, or that there is an overpayment of tax. See Hannan v. Commissioner, 52 T.C. 787 (1969). The fact that petitioners may have made payments towards the deficiencies determined by respondent does not affect our ability to decide

the instant case. A taxpayer may pay the deficiency and interest at any time after the notice of deficiency is mailed and still be entitled to his "day" in this Court. Sec. 6213(b)(4); Estate of Richter v. Commissioner, 16 B.T.A. 936, 937 (1929). The taxpayer who so pays the deficiency and interest and then prevails will be entitled to a refund or credit, sec. 6512(b)(3)(A), as well as interest thereon. Sec. 6611.[4]

2. Bad Debt Deduction for 1981

From January 1, 1979 through June 23, 1981, petitioner John J. Kaiser (petitioner) was the 100-percent shareholder of MACS Corp. (MACS), an S corporation in the business of buying and selling cleaning supplies in the Bridgeport, Connecticut, area. During 1979 and subsequent years through 1981, petitioner advanced a total of $111,725 to MACS. On its 1981 Form 1120S (U.S. Small Business Corporation Income Tax Return) MACS reported paid-in or capital surplus in the amount of $1,000 and loans from shareholders in the amount of $110,725.

On their 1979, 1980, and 1981 Federal income tax returns, petitioners claimed losses from MACS in the total amount of $95,661 and reduced petitioner's basis in the shareholder loans

---

[4] Petitioners have not presented us with any argument that the alleged payments were improperly applied by respondent or that they were deposits against the deficiencies determined by respondent. See Risman v. Commissioner, 100 T.C. 191 (1993). Indeed, there would be insufficient facts in the record before us to decide such issue.

to $15,064.  MACS filed a final Form 1120S for its short taxable year ending June 23, 1981.  On their 1981 Federal income tax return, petitioners claimed a deduction for a business bad debt in the amount of $15,064.  In the notice of deficiency, respondent determined that petitioners are not entitled to a bad debt deduction for the 1981 taxable year.  On brief, however, respondent concedes that petitioners are entitled to a deduction for a bad debt of $15,064 for their 1981 taxable year, but characterizes the deduction as a nonbusiness bad debt.

A taxpayer who claims a deduction bears the burden of substantiating the amount and purpose of the item claimed. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.

Section 166(a)(1) provides, in general, for the deduction of debts that become wholly worthless during a taxable year. Section 166, however, distinguishes between business bad debts and nonbusiness bad debts.  Sec. 166(d); sec. 1.166-5(b), Income Tax Regs.  Business bad debts may be deducted against ordinary income if they become wholly or partially worthless during the year (in the case of the latter, to the extent charged off during the taxable year as partially worthless debts).  Sec. 1.166-3, Income Tax Regs.  To qualify for the business bad debt deduction, the taxpayer must establish that the debt was proximately related to the conduct of the taxpayer's trade or business.  United

States v. Generes, 405 U.S. 93, 103 (1972); sec. 1.166-5(b), Income Tax Regs.

Nonbusiness bad debts, on the other hand, may be deducted, but only if they become entirely worthless during the year claimed; they are, moreover, to be treated as short-term capital losses. Sec. 166(d). Generally, a nonbusiness bad debt is a debt other than a debt (1) created or acquired in the trade or business of the taxpayer or (2) the loss from the worthlessness of which is incurred in a trade or business of the taxpayer. Sec. 166(d)(2).

Whether a debt is characterized as business or nonbusiness is a question of fact. Sec. 1.166-5(b)(2), Income Tax Regs. The burden is on petitioner to prove that he was engaged in a trade or business, and that his worthless loans constituted business, rather than nonbusiness bad debts. Rule 142(a); United States v. Generes, supra at 104; Whipple v. Commissioner, 373 U.S. 193, 202 (1963).

Being an employee may constitute a trade or business. Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979). In the instant case, however, petitioners have failed to offer sufficient evidence to prove that petitioner was an employee of MACS. Indeed, the evidence in the record indicates otherwise. The only Federal income tax return for MACS in the record does not show any compensation to

officers or any salaries or wages paid. Petitioner testified that he was not an employee of MACS but that he was chairman of its board of directors. At trial, when petitioner was asked if he received a salary from MACS, he testified that he received a salary in the form of rent paid by MACS for use of a warehouse he owned.[5] Under the circumstances, we hold that petitioner was not an employee of MACS.

Even if petitioner were an employee of MACS, he has not shown that the loans were "necessary to keep his job or [were] otherwise proximately related to maintaining his trade or business as an employee." Whipple v. Commissioner, supra at 204. Moreover, we believe that petitioner's dominant motive for making the loans was to protect his investment. See United States v. Generes, supra at 103 ("We conclude that in determining whether a bad debt has a 'proximate' relation to the taxpayer's trade or business, as the Regulations specify, and thus qualifies as a business bad debt, the proper measure is that of dominant motivation, and that only significant motivation is not sufficient.").

On the record before us, we hold that petitioners have failed to present sufficient evidence to establish that they are

---

[5]     Petitioner did not show what the rent was, or that he was in the business of leasing the warehouse to MACS, much less that the dominant reason for the loan was to protect any such business. Cf. Commissioner v. Moffat, 373 F.2d 844 (3d Cir. 1967), affg. T.C. Memo. 1965-183.

entitled to a deduction for a business bad debt.  Consequently, we sustain respondent's determination that the loss in question constituted a nonbusiness bad debt.

3.  Schedule C Losses

Petitioners filed Schedules C with their 1980 and 1981 Federal income tax returns reporting net losses from an activity entitled "Computer Books + Tapes" in the respective amounts of $6,880 and $1,162.  Respondent determined, inter alia, that such activity was not entered into for profit, and, consequently, disallowed the claimed losses pursuant to section 183(a).

Section 183(a) generally limits the amount of expenses that a taxpayer may deduct with respect to an activity "not engaged in for profit" to the deductions provided in section 183(b). Section 183(b)(1) provides that deductions that would be allowable without regard to whether such activity is engaged in for profit are to be allowed.  Section 183(b)(2) further indicates that deductions which would be allowable only if such activity were engaged in for profit are to be allowed, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable under section 183(b)(1).  An activity is "not engaged in for profit" if it is an activity other than one with respect to which deductions are allowable for the taxable year under section 162 or section 212(1) or (2).  Sec. 183(c).

To prove that an activity is engaged in for profit, the taxpayer must show that the activity was engaged in with an actual and honest objective of making a profit.  E.g., <u>Hulter v. Commissioner</u>, 91 T.C. 371, 392 (1988); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).  Although the taxpayer's expectation of a profit need not be reasonable, a good faith objective of making a profit is required.  E.g., <u>Dreicer v. Commissioner</u>, <u>supra</u>; <u>Dunn v. Commissioner</u>, 70 T.C. 715, 720 (1978), affd. on another issue 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(a), Income Tax Regs.

Petitioners offered no evidence that they pursued the "Computer Books + Tapes" activity with the requisite profit objective, and, accordingly, we sustain respondent's disallowance of the losses claimed from such activity.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.